**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division**

| | |
|---|---|
| ROBERT ROY AKINS and RACHAEL LATINI<br>    1213 Overbrook Rd.<br>    Idlewylde, Maryland 21239-1607<br><br>On behalf of themselves and all other similarly situated,<br><br>                    Plaintiffs,<br><br>        v.<br><br>PNC BANK, N.A.<br>    The Tower at PNC Plaza<br>    300 Fifth Avenue<br>    Pittsburgh, Pennsylvania 15222<br><br>                    Defendant. | Civil Action No. _____<br><br>JURY TRIAL DEMANDED |

### NATIONWIDE CLASS ACTION COMPLAINT; DEMAND FOR JURY TRIAL

1.     Plaintiffs Robert Roy Akins and Rachael Latini ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege the following against Defendant PNC Bank, N.A. ("PNC" or "Defendant"), based on personal knowledge as to Plaintiffs, and on information and belief as to all other matters.

### INTRODUCTION

2.     This putative class action concerns PNC's practice of taking advantage of homeowners who were unable to make their mortgage payments during the COVID-19 pandemic.

3.     Plaintiffs and a class of similarly situated consumers in the United States (the "Class") entered into COVID-19 Payment Deferral Agreements ("Deferral Agreements") with PNC.  Under the terms of the Deferral Agreements, PNC agreed to bring their mortgages current and delay repayment of certain past-due monthly principal and interest payments, as well as other

amounts advanced by PNC in connection with their missed payments.  PNC further agreed that the deferred payments would not accrue interest, and that Plaintiffs and the Class would not be responsible for paying the past-due amounts until the earlier of (a) the maturity date of the mortgage; (b) the sale of the property or (c) the payoff or refinance of the mortgage loan.  PNC represented and agreed that the Deferral Agreements would not change any other terms of the mortgage loan.

4.      In breach of the Deferral Agreements, PNC added the total past-due amounts to the outstanding principal balance on the loan.  This double-charged Plaintiffs and the Class for their past-due principal payments and improperly increased the amount of their mortgages.  In addition, Plaintiffs and other members of the Class who subsequently paid the deferred amounts early (i.e., before paying off the loan in full) were double-charged the amount of past-due interest that PNC agreed to defer.

5.      The error in PNC's practice is that a portion of each customer's monthly payment is applied to pay down the principal pursuant to an amortization schedule.[1]  When a customer misses a monthly payment, it does not increase the outstanding principal by the unpaid principal amount.  The principal remains the same.  It just has not been reduced.  The only additional amount that is owed is the accrued interest and, if applicable, penalties.  For example, assume a person owes $100,000 and has agreed to pay back the loan in $10,000 monthly installments.  If that person misses the first $10,000 payment, the person does not suddenly owe $110,000.  The person still owes $100,000 in principal plus any accrued interest and penalties.  But what PNC is doing is the equivalent of improperly adding the $10,000 missed-payment to the outstanding principal balance and increasing the mortgage loan to $110,000.

---

[1] The exception would be an "interest only" loan whereby the customer is only required to pay the accrued interest each month until a specified time, at which point the principal is required to be repaid as part of a "balloon payment."

6.      This practice constitutes a breach of the Deferral Agreements because PNC is improperly increasing the outstanding principal balance on the mortgage loan and overcharging Plaintiffs and the Class.

7.      PNC is also violating the federal Truth-In-Lending Act ("TILA") in at least three ways. *First*, 15 U.S.C. § 1638(f) of TILA, and its implementing Regulation Z, 12 C.F.R. § 1026.41(d)(7)(i), requires the creditor or servicer of the mortgage loan (PNC) to provide periodic mortgage statements that accurately disclose the amount of the outstanding principal balance under the mortgage. PNC is violating TILA because its mortgage statements to Plaintiffs and the Class included, and for those who have not yet paid off their mortgage loans still include, inaccurate and inflated principal balances. *Second*, 12 C.F.R. § 1026.41(d)(7)(iv) requires PNC to disclose in its mortgage statements "the existence of any prepayment penalty … that may be charged." PNC is violating TILA because it did not disclose that if the deferred amounts were paid off early, there would be a pre-payment penalty in the form of Plaintiff and the Class being doubled-charged the deferred interest. *Third*, 15 U.S.C. § 1639g of TILA and 12 C.F.R. § 1026.36(c)(3) require PNC to provide borrowers, upon request, with an accurate statement of the total amount required to pay off the loan by a specified date. PNC violated that law by providing Plaintiffs and other members of the Class with inaccurate and overstated payoff statements as a result of the practices described herein.

8.      PNC's practices also constitute a violation of the Maryland Consumer Protection Act (the "MCPA"). The MCPA prohibits unfair and deceptive trade practices in the extension of consumer credit and/or collection of consumer debts, including but not limited to making false or misleading representations that have the "capacity, tendency, or effect of deceiving or misleading consumers" and failing to "state a material fact if the failure deceives or tends to deceive." Md. Code Ann. Com. Law §§ 13-301(1), (3), (9). PNC violated the MCPA by: (a) misrepresenting that its Deferral Agreements would only "delay" or "defer" the payment of the past-due amounts and that "[t]he payment deferral will not change any other terms of your mortgage"; (b) improperly adding the total amount of the past-due monthly payments to the outstanding principal balance and

overstating the outstanding principal obligation on PNC's monthly mortgage statements and account records; (c) failing to disclose that PNC would be increasing the principal balance owed as a result of the payment deferral; (d) overstating the amount owed on the mortgage loan at the time of repayment or refinance; (e) failing to disclose the customer would be double charged the deferred interest amount if the deferred amounts were repaid early; (f) providing inaccurate payoff statements; and (g) collecting and failing to refund overpayments, including overpayments on principal and interest.

9. Based on the foregoing, Plaintiffs, on behalf of themselves and the proposed Class, are seeking, *inter alia*, the following relief:

(a)     Damages and restitution of all overcharges on the mortgage loan;

(b)     An order requiring PNC to recalculate the outstanding principal balance on all affected mortgage loans, notify all affected consumers and refund or credit any resulting overcharges;

(c)     Statutory damages for violations of TILA;

(d)     Declaratory relief;

(e)     Pre- and post-judgment interest;

(f)     Reasonable attorneys' fees, costs and expenses; and

(g)     Any other relief that the Court deems just and appropriate.

10. Plaintiffs, in their individual capacities only, are also asserting a claim for violation of the Real Estate Settlement Practices Act ("RESPA") based on PNC's failure to appropriately respond to Plaintiffs' written notices that there were errors on their account.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (because Plaintiffs allege violations of the Truth in Lending Act and Real Estate Settlement Practices Act), pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), (because at least one Class member is of diverse citizenship from one of the defendants, there are 100 or more Class members, and the aggregate amount in controversy exceeds $5,000,000), and/or pursuant to 28 U.S.C. § 1367

(because the claims are so related to those over which the Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution).

12.    Venue is proper in the District of Maryland under 28 U.S.C. § 1391.  PNC regularly conducts business in this District and a substantial part of the events giving rise to the claims asserted herein occurred in this District in Baltimore County, Maryland.

**THE PARTIES**

13.    At all relevant times, Plaintiffs Robert Roy Akins and Rachael Latini, husband and wife ("Plaintiffs"), have been citizens of the State of Maryland, and residents of Idlewylde, Maryland.

14.    At all relevant times, Defendant PNC Bank, N.A. ("PNC") has been a national association bank chartered in the State of Delaware with its corporate headquarters located in Pittsburgh, Pennsylvania.  PNC is and/or was the creditor and servicer of the mortgage loans with Plaintiffs and the Class and entered into Deferral Agreements with Plaintiffs and the Class.

**FACTS RELATING TO PLAINTIFFS**

15.    Plaintiffs entered into a mortgage loan with PNC or on about June 1, 2017 for their home residence in Idlewylde, Maryland.  The mortgage was a 30-year fixed amortized loan, with an interest rate of 3.875%.  The principal amount of the mortgage was $239,400.

16.    Plaintiffs' scheduled monthly principal and interest payments were $1,125.75.[2]  In addition, Plaintiffs were also required to pay approximately $400 to $500 in escrow payments for taxes and insurance to be paid by PNC on their behalf.

17.    For the first three-plus years of their loan, Plaintiffs regularly paid their scheduled monthly mortgage payments.  However, in around the fall of 2020, Plaintiffs began suffering

---

[2] As with all mortgage loans, how much of the monthly payment consisted of principal verses interest varied over the life of the loan, weighted more heavily toward principal as the loan matured.  For the first few years, the $1,125.75 monthly payment was allocated so that approximately $400 was applied to pay down the principal and $725.75 was applied to pay the accrued interest.

significant financial hardship due to the COVID-19 pandemic.  As a result, Plaintiffs were unable to make their monthly mortgage payments.

18.    Plaintiffs contacted PNC, who agreed to a forbearance agreement whereby Plaintiffs could "pause" their monthly mortgage payments for an 8-month period beginning in September 2020.  Pursuant to that agreement, Plaintiffs would still owe the missed-mortgage payments at the end of the 8-month forbearance period (i.e., the amounts were not forgiven), but PNC would not charge Plaintiffs any late fees or penalties.

19.    At the time of the forbearance agreement in September 2020, the outstanding principal balance on Plaintiffs' loan was $224,812.76.

20.    Toward the end of the 8-month forbearance period, on or about April 9, 2021, PNC notified Plaintiffs they had been approved for a FNMA COVID-19 Payment Deferral.[3]  Under this program, PNC would agree to bring Plaintiffs' mortgage "current" and defer repayment of the past-due amounts until the end of the mortgage.

21.    On or about April 9, 2021, PNC sent Plaintiffs a written Deferral Agreement which set forth the terms of the offer.  Plaintiffs accepted the offer on or about April 11, 2021.  A true and correct copy of the Deferral Agreement (with personal information redacted) is attached as **Exhibit A.**

22.    At the time Plaintiffs entered the Deferral Agreement, the past-due amounts on their loan were $10,691.61.  This total included $9,006 in past-due principal and interest payments for an 8-month period, consisting of $3,234.72 in principal and $5,771.28 in interest.  It also included $1,685.61 in escrow payments for taxes and insurance that were advanced by PNC during the forbearance period.   The Deferral Agreement itemized these past due amounts as set forth below:

| | |
|---|---|
| Number of past due principal and interest payments to be deferred | 8 |
| Past-due principal and interest payment amount to be deferred | $9,006.00 |
| Other past-due amounts to be deferred* | $1,685.61 |
| Total past-due amounts to be deferred** | $10,691.61 |
| Late charges to be waived | $0.00 |

---

[3] "FNMA" stands for Fanny Mae.

Exhibit A, p. 2.

23.    Pursuant to the terms of the Deferral Agreement, PNC agreed that Plaintiffs' loan would be brought "current" and the past-due amounts of $10,691.61 would be deferred until the end of the mortgage.  Exhibit A, p. 2.  The Deferral Agreement further provided that these deferred payments would not accrue interest and would only be required to be paid "upon the maturity date of the mortgage or earlier upon the sale or transfer of the property, payoff of the mortgage loan, or the date the interest-bearing principal balance is paid in full."  *Id.*  In other words, Plaintiffs would resume their ordinary monthly mortgage payments of $1,125.75 plus their escrow payments on a go-forward basis, but they would not owe the past-due amounts until the end of the loan.  *Id.*  Other than this change, the Deferral Agreement expressly stated that "[t]he payment deferral will not change any other terms of your mortgage."  *Id.*

24.    Specifically, the Deferral Agreement provided in relevant part as follows:

### What is a Payment Deferral?

A payment deferral brings your mortgage current and delays repayment of certain past-due monthly principal and interest payments, as well as other amounts we paid on your behalf related to the past-due monthly payments. The deferred payments will not accrue interest and will not be included in your monthly payment. You will be responsible for paying the past-due amounts upon the maturity date of the mortgage or earlier upon the sale or transfer of the property, payoff of the mortgage loan, or the date the interest-bearing principal balance is paid in full.

### Terms of the Payment Deferral

As of May 1, 2021, we will

- adjust the due date of your next scheduled monthly payment to bring your mortgage current,
- defer the scheduled repayment of the total past-due amounts to the maturity date of the mortgage or earlier upon the sale or transfer of the property, payoff of the mortgage loan, or the date the interest-bearing principal balance is paid in full; and
- waive any late charges.

**Interest will not be charged on the total past-due amounts to be deferred. The payment deferral will not change any other terms of your mortgage.

Exhibit A, p. 2.

25.    Despite the Deferral Agreement prohibiting PNC from changing "any other terms of [Plaintiff's] mortgage," PNC breached the Deferral Agreement by adding the entire $10,691.61 in deferred payments to the outstanding principal balance.

26.    This is reflected in PNC's "Customer Account Activity Statement" for Plaintiffs which is attached as **Exhibit B** (with personal information redacted).  Specifically, prior to the forbearance period, Plaintiffs' principal balance was $224,812.76 as reflected in the July 31, 2020 entry in PNC's Customer Account Activity Statement.

<u>**Customer Account Activity Statement**</u>



Exhibit B, p. 8.

27.    The principal balance on Plaintiffs' mortgage loan remained $224,812.76 at the end of the forbearance period, as reflected in Plaintiffs' March 16, 2021 Mortgage Statement from PNC attached as **Exhibit C** (with personal information redacted).

<u>**March 16, 2021 Mortgage Statement**</u>

**PNC BANK**

B6-YM07-01-7
P.O. Box 1820
Dayton, Ohio 45401-1820

**Mortgage Statement**

Statement Date    03/16/2021

pnc.com/homehq

| Account Information | | Explanation of Amount Due | |
|---|---|---|---|
| Outstanding Principal | $224,812.76 | Principal | $408.92 |
| Interest Rate | 3.8750% | Interest | $716.83 |
| | | Escrow (Taxes and Insurance) | $463.67 |
| | | **Regular Monthly Payment** | **$1,589.42** |

Exhibit C, p. 1.

28.    However, immediately after Plaintiffs executed the Deferral Agreement, on April 13, 2021, PNC increased the outstanding principal balance by $10,691.61 as reflected in PNC's Customer Account Activity Statement.

**Customer Account Activity Statement**

```
04-13-21  09-20  143  ADJUSTMENT
      0.00    10,691.61-      0.00      0.00
            235,504.37                        NEW PRINCIPAL/ESCROW BALANCES
```

Exhibit B, p. 6.

29.    The problem with this adjustment is that this $10,69.61 amount included unpaid principal payments of $3,234.72 as reflected in the chart below.

**Chart of Unpaid Amounts During 8-Month Forbearance Period**

| Mortgage Payment Due Date | Unpaid Principal | Unpaid Interest | Total Unpaid Principal + Interest | Escrow Advances by PNC | Total Deferral Agreement |
|---|---|---|---|---|---|
| Surplus in Escrow Acct. | | | | $777.94 | |
| Sept. 1, 2020 | ($399.79) | ($725.96) | ($1,125.75) | ($81.80) | |
| Oct. 1, 2020 | ($401.08) | ($724.67) | ($1,125.75) | ($81.80) | |
| Nov. 1, 2020 | ($402.36) | ($723.37) | ($1,125.75) | ($81.80) | |
| Dec. 1, 2020 | ($403.68) | ($722.07) | ($1,125.75) | ($1,890.95) | |
| Jan. 1, 2021 | ($404.98) | ($720.77) | ($1,125.75) | ($81.80) | |
| Feb. 1, 2021 | ($406.29) | ($719.46) | ($1,125.75) | ($81.80) | |
| March 1, 2021 | ($407.60) | ($718.15) | ($1,125.75) | ($81.80) | |
| April 1, 2021 | ($408.92) | ($716.83) | ($1,125.75) | | |
| **TOTAL** | **$3,234.72** | **$5,771.28** | **$9,006.00** | **$1,685.61** | **$10,691.61** |

30.    As discussed in Paragraph 5 above, when a party fails to pay down the principal balance on a loan, it *does not increase* the principal owed on the loan.  The principal remains the same.  It is just not reduced.  The only amounts that would increase the outstanding principal

balance on the Plaintiffs' mortgage loan would be the unpaid accrued interest and the escrow advances paid by PNC. Consequently, by adding the unpaid principal payments of $3,234,72 to the outstanding principal balance, PNC improperly *increased* the amount of Plaintiffs' mortgage.

31.    Immediately after entering the Deferral Agreement, on or about April 14, 2021, Plaintiffs paid $12,715.36 to PNC, which was the amount of the "overdue payments" reflected on their March 16, 2021 Mortgage Statement.[4]

## March 16, 2021 Mortgage Statement

| Account Information | | Explanation of Amount Due | |
| --- | --- | --- | --- |
| Outstanding Principal | $224,812.76 | Principal | $408.92 |
| Interest Rate | 3.8750% | Interest | $716.83 |
| | | Escrow (Taxes and Insurance) | $463.67 |
| | | **Regular Monthly Payment** | **$1,589.42** |
| | | Overdue Payments | $11,125.94 |
| | | **Total Amount Due** | **$12,715.36** |

*Recent Account History*
- Payment Due 10/01/2020: Unpaid balance of $1,589.42
- Payment Due 11/01/2020: Unpaid balance of $1,589.42
- Payment Due 12/01/2020: Unpaid balance of $1,589.42
- Payment Due 01/01/2021: Unpaid balance of $1,589.42
- Payment Due 02/01/2021: Unpaid balance of $1,589.42
- Payment Due 03/01/2021: Unpaid balance of $1,589.42
- Current payment due 04/01/2021: $1,589.42
- **Total:  $12,715.36 due.  You must pay this amount to bring your loan current.**

Exhibit C, p.1.

---

[4]  Notably, the total amount due on the March 16, 2021 Mortgage Statement ($12,715.36) is higher than the past-due amounts deferred under the Deferral Agreement ($10,691.61). *Compare* Exhibit A, p.2 with Exhibit C, p. 1. The reason for this discrepancy is that each month during the forbearance period, PNC billed the same monthly mortgage payment ($1,589.42), including $463.67 that would be placed in an escrow account to pay for future taxes and insurance. *See, e.g.*, Exhibit C, p. 1. At the time Plaintiffs entered into the forbearance agreement, Plaintiffs had a surplus of money in their escrow account and PNC only had to advance $1,685.61 to cover Plaintiffs' taxes and insurance payments during the forbearance period. *See* Exhibit B, pp. 7-8. Consequently, when calculating the past-due amounts under the deferral agreement, PNC added the past-due principal and interest payments during the forbearance period ($1,125 x 8 = $9,006) to the amounts PNC advanced for taxes and insurance ($1,685.61) to arrive at the past-due payment amount of $10,691.61. Exhibit A, p. 2.

32.     On April 14 and April 16, 2021, PNC allocated $9,006 of this $12,715.36 payment to cover the past-due principal and interest payments for the 8-month forbearance period ($1,125.75 X 8 months = $9,006). Specifically, PNC applied $3,234.72 to the principal and collected the remaining $5,771.28 as interest. This is reflected in Plaintiffs' April 14, 2021 Mortgage Statement attached as **Exhibit D** and their April 16, 2021 Mortgage Statement attached as **Exhibit E** (with personally information redacted).

### April 14, 2021 Mortgage Statement

| Date Received | Effective Date | Description | Amount Received | Principal | Interest | Escrow | Charges/ Other Fees | Optional Insurance | Unapplied |
|---|---|---|---|---|---|---|---|---|---|
| 04/14/21 | 04/14/21 | Payment for 09/20 | 0.00 | 399.79 | 725.96 | 0.00 | 0.00 | 0.00 | -1,125.75 |
| 04/14/21 | 04/14/21 | Payment for 10/20 | 0.00 | 401.08 | 724.67 | 0.00 | 0.00 | 0.00 | -1,125.75 |
| 04/14/21 | 04/14/21 | Payment for 11/20 | 0.00 | 402.38 | 723.37 | 0.00 | 0.00 | 0.00 | -1,125.75 |
| 04/14/21 | 04/14/21 | Payment for 12/20 | 0.00 | 403.68 | 722.07 | 0.00 | 0.00 | 0.00 | -1,125.75 |
| 04/14/21 | 04/14/21 | Payment for 01/21 | 0.00 | 404.98 | 720.77 | 0.00 | 0.00 | 0.00 | -1,125.75 |
| 04/14/21 | 04/14/21 | Payment for 02/21 | 0.00 | 406.29 | 719.46 | 0.00 | 0.00 | 0.00 | -1,125.75 |
| 04/14/21 | 04/14/21 | Payment for 03/21 | 0.00 | 407.60 | 718.15 | 0.00 | 0.00 | 0.00 | -1,125.75 |

Exhibit D, p. 3.

### April 16, 2021 Mortgage Statement

| Date Received | Effective Date | Description | Amount Received | Principal | Interest | Escrow | Charges/ Other Fees | Optional Insurance | Unapplied |
|---|---|---|---|---|---|---|---|---|---|
| 04/16/21 | 04/14/21 | Payment for 04/21 | 0.00 | 408.92 | 716.83 | 0.00 | 0.00 | 0.00 | -1,125.75 |

Exhibit E., p. 3.

33.     However, as noted above, on April 13, 2021, after Plaintiffs executed the Deferral Agreement, PNC improperly added the past-due amounts of $10,691.61 to the outstanding principal balance to raise the outstanding principal balance to a total of $235,504.37.

### Customer Account Activity Statement



```
04-13-21  09-20  143  ADJUSTMENT
       0.00  10,691.61-       0.00       0.00
             235,504.37                        NEW PRINCIPAL/ESCROW BALANCES
```

Exhibit B, 6. Consequently, even though Plaintiffs immediately paid back all of the past-due amounts after entering the Deferral Agreement, PNC only reduced the outstanding principal balance by $3,234.72 – i.e., from $235,504.37 down to $232,269.95 – as reflected in Plaintiffs'

April 16, 2021 Mortgage Statement attached as Exhibit E.

### April 16, 2021 Mortgage Statement

**Account Information**

| | |
|---|---|
| Outstanding Principal | $232,269.65 |
| Interest Rate | 3.8750% |

Exhibit E, p. 1. This is significantly *higher* than the principal balance immediately prior to the Deferral Agreement, even though Plaintiff paid *all* of the deferred amounts within days of entering into the Deferral Agreement.

### March 16, 2021 Mortgage Statement

**Account Information**

| | |
|---|---|
| Outstanding Principal | $224,812.76 |
| Interest Rate | 3.8750% |

Exhibit C, p. 1.  Further, PNC did not reduce the outstanding principal amount by the past-due interest amount paid by Plaintiffs, even though PNC added that same interest amount to the principal balance after the Deferral Agreement.  In other words, Plaintiffs were double-charged the amount of past-due interest that PNC agreed to defer.

34.    Each month, beginning on April 14, 2021, Plaintiffs received a Mortgage Statement from PNC which disclosed an inaccurate and inflated outstanding principal balance in violation of TILA.  *See*, e.g., Exhibits D, E, F.  In reliance on PNC's Mortgage Statements, Plaintiffs paid the total amount due through August 2021.  In total, Plaintiffs paid PNC approximately $19,132.79 during this period, including paying back the missed payments during the forbearance period.  Nevertheless, according to PNC's August 2021 Mortgage Statement, the outstanding principal

balance was $230,198.18 – still greater than the balance before the forbearance period ($224,812.76), even though all past-due amounts were paid. A copy of the August 2021 Mortgage Statement (with personal information redacted) is attached as **Exhibit F**.

**August 2, 2021 Mortgage Statement**

## Account Information

| Outstanding Principal | $230,198.18 |
|---|---|
| Interest Rate | 3.8750% |

**Past Payments Breakdown**

| | Paid Since Last Statement | Paid Year to Date |
|---|---|---|
| Principal | $415.58 | $5,306.19 |
| Interest | $710.17 | $9,335.50 |
| Escrow (Taxes and Insurance) | $549.84 | $4,434.81 |
| Fees | $0.00 | $56.29 |
| Unapplied Funds* | $0.00 | $0.00 |
| Total | $1,675.59 | $19,132.79 |

Exhibit F, p. 1.

    35.    In August 2021, Plaintiffs decided to refinance their mortgage with another bank. In the process of paying off their loan to PNC, Plaintiffs sent written notices to PNC, via email, notifying PNC that it must have calculated the outstanding principal balance in error. A copy of the correspondence is attached as **Exhibit G.**

    36.    Pursuant to the federal Real Estate Settlement Practice Act ("RESPA"), within 30 days after receiving Plaintiffs' written notice of the error, PNC was required to (a) "make appropriate corrections" to the account and notify Plaintiffs of the corrections; (b) "after conducting an investigation, provide [Plaintiffs] with a written explanation that includes . . . a statement of the reasons for which the servicer [PNC] believes the account" is correct; or (c) "after conducting an investigation, provide the borrower with a written explanation or clarification that includes . . . information requested by the borrower or an explanation of why the information

requested is unavailable or cannot be obtained by the servicer." 12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1034.34(e)(1)(i).

37.     In violation of RESPA, PNC did not correct the errors noted by Plaintiffs, nor did PNC conduct an investigation and provide a written statement of the reasons PNC believed its practice of adding the total past-due amounts to the principal balance is appropriate.  This is noted in Plaintiffs' August 11, 2021 email to PNC.  *See* Exhibit G ("You still haven't explained why/how we've paid almost $20,000 but our balance has increased.")

38.     Notably, during a telephone call with a PNC representative, the representative told Plaintiffs that she had received a lot of complaints from customers who entered into Deferral Agreements.  Nevertheless, PNC never corrected the error on Plaintiffs' account, nor did it provide a written explanation for its practice.

39.     When Plaintiffs refinanced, PNC sent Plaintiffs and their new lender an inaccurate payoff statement that required Plaintiffs to pay $232,814.85 to PNC to pay off the loan in full, as indicated on the Settlement Statement for their refinance.  The $232,814.85 included $230,613.76 in principal, $350.23 in interest and $1,785.86 in charges and fees.  A true and correct copy of the Settlement Statement is attached as **Exhibit H** (with personal information redacted).

## Settlement Statement

| Description | Buyer | | |
|---|---|---|---|
| | P.O.C. | Debit | Credit |
| Payoffs | | | |
| Paid in Full – 1st Mortgage Loan to PNC Bank | | $232,814.85 | |
| Principal: $230,613.76 | | | |
| Interest: $350.23 | | | |
| Charges and Fees: $1,785.86 | | | |

Exhibit H, p. 1.

40.     Accordingly, on or about August 11, 2021, in reliance on the amount PNC demanded to release its mortgage interest in the property, Plaintiffs paid $232,814.85 to PNC to pay off their mortgage.  This included an overpayment of principal and interest as a result of PNC's wrongful practices described above.

## CLASS ACTION ALLEGATIONS

41.    **Class Definition.** Plaintiffs bring this action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class: All persons in the United States who entered FNMA COVID-19 Payment Deferral Agreements with PNC and who had their total deferred payments added to the outstanding principal balance on their mortgage loans. The Class Period is based on the applicable statutes of limitations for breach of contract claims and TILA claims.

42.    **15 U.S.C. § 1639g Subclass Definition:** Plaintiffs also bring this action on behalf of the following Subclass: All persons in the United States (a) who entered FNMA COVID-19 Payment Deferral Agreements with PNC; (b) who had their total deferred payments added to the outstanding principal balance on their mortgage loans; and (c) who, as a result, received an inaccurate payoff statement from PNC at the time they refinanced or paid off their mortgage loans (the "15 U.S.C. § 1639g Subclass"). The Class Period is one year from the filing of this Complaint to the present.

43.    **Maryland Subclass Definition.** Plaintiffs also bring this action on behalf of the following Maryland Subclass: All persons in the State of Maryland who entered FNMA COVID-19 Payment Deferral Agreements with PNC and who had their total deferred payments added to the outstanding principal balance on their mortgage loans (the "Maryland Subclass"). The Class Period is three years from the filing of this Complaint to the present.

44.    The 15 U.S.C. § 1639g Subclass and the Maryland Subclass are referred to collectively as the "Subclasses."

45.    Excluded from the proposed Class and Subclasses are: (a) Defendant and its agents, officers, directors, parent companies, subsidiaries, and affiliates; (b) counsel representing Plaintiffs and any person employed by counsel; and (c) any judicial officers assigned to this case and their staff.

46.     Plaintiffs reserve the right to revise the definition of the Class and Subclasses based upon subsequently discovered information.

47.     **Numerosity:** While the exact number of the members of the Class and Subclasses are unknown to Plaintiffs at this time, membership in the Class and Subclasses may be ascertained from the records maintained by PNC.  At this time, Plaintiffs are informed and believe that the Class and Subclasses includes thousands of members.  Therefore, the Class and Subclasses are sufficiently numerous that joinder of all members in a single action is impracticable under Fed. R. Civ. P 23(a)(1), and the resolution of their claims through a class action will be of benefit to the parties and the Court.

48.     **Ascertainability:** The names and addresses of the members of the Class and Subclasses are contained in PNC's records.  Notice can be provided to the members of the Class and Subclasses through direct mailing, publication, or otherwise using techniques and forms of notice similar to those customarily used in consumer class actions arising under state and federal law.

49.     **Common Facts:** Common facts exist as to all members of the Class and Subclasses and predominate over any issues affecting individual members.  The common facts include the following:

        a.     Plaintiff and the members of the Class and Subclasses entered into Deferral Agreements with PNC.

        b.     The terms of the Deferral Agreements were substantively uniform with the exception of the amounts of the deferred payments.

        c.     PNC's standard practice was to add the deferred payments to the outstanding principal balance on the mortgage loan.

        d.     PNC's standard practice of adding the total deferred payments to the outstanding principal balance on the mortgage loan has the effect of double-charging Plaintiffs and the Class and Subclasses for their past-due principal amounts and improperly increasing the outstanding principal balance on their mortgage loans.

e.     PNC sent Plaintiffs and the Class and Subclasses periodic mortgage statements that contained an inaccurate and inflated outstanding principal balance in violation of TILA.

f.     PNC sent Plaintiffs and the Class and Subclasses periodic mortgage statements that failed to disclose that Plaintiffs and the Class and Subclasses would be charged a pre-payment penalty if they paid the deferred amounts early, i.e., before the original maturity date or payment or refinance of the mortgage loans.

g.     PNC sent inaccurate payoff statements to Plaintiffs and the 15 U.S.C. § 1639g Subclass as a result of its practice of adding the total deferred payments to the outstanding principal balance on the mortgage loans.

h.     Plaintiffs and the Class and Subclasses relied on the accuracy of PNC's mortgage statements when making their monthly mortgage payments.

i.     Plaintiffs and the 15 U.S.C. § 1639g Subclass relied on the accuracy of PNC's payoff statements when paying off or refinancing their mortgage loans.

50.     **Common Questions of Law:** Common questions of law exist as to all members of the Class and Subclasses and predominate over any issues solely affecting individual members. The common questions of law include, but are not limited to:

a.     Whether PNC's practice of adding the deferred payments to the outstanding principal balance on the mortgage loan constitutes a breach of PNC's Deferral Agreements.

b.     Whether PNC violated TILA by sending periodic mortgage statements that contained inaccurate and inflated principal balances.

c.     Whether PNC violated TILA by sending periodic mortgage statements that failed to disclose that Plaintiffs and the Class and Subclasses would be charged a pre-payment penalty if they paid off the deferred amounts early.

d.     Whether PNC violated TILA by sending Plaintiffs and the 15 U.S.C. § 1639g Subclass inaccurate payoff statements.

e.     Whether PNC violated the MCPA by (1) mispresenting that its Deferral Agreements would only "delay" or "defer" the payment of past-due amounts and that "[t]he payment deferral will not change any other terms of your mortgage"; (2) adding the amount of the past-due monthly payments to the outstanding principal balance and overstating the outstanding principal obligation on PNC's monthly mortgage statements and account records; (3) failing to disclose that PNC would be increasing the principal balance owed as a result of the payment deferral; (4) overstating the amount owed on the mortgage loan at the time of repayment or refinance; (5) failing to disclose the customer would be double charged the deferred interest amount if the deferred amounts were repaid early, (6) providing inaccurate payoff statements and (7) collecting and failing to refund overpayments on the mortgage loan.

f.     Whether Plaintiffs and the Class and Subclasses are entitled to damages and restitution.

g.     Whether Plaintiffs and the Class and Subclasses are entitled to statutory damages.

h.     Whether Plaintiffs and the Class and Subclasses are entitled to an award of reasonable attorneys' fees and costs.

i.     Whether an order should issue requiring PNC to recalculate the principal balances owed by the Class and Subclasses who have not yet paid off their mortgages in order to correct the errors identified in this Complaint and credit their accounts accordingly.

j.     Whether a declaration should issue providing that PNC does not have the right to increase the principal balance on the mortgage loan by the amount of past-due principal payments under the terms of the Deferral Agreement.

51.    **Typicality:** Plaintiffs' claims are typical of the Class and Subclasss.  Plaintiffs have been subjected to the same wrongful business practice as the Class and Subclasses in that PNC wrongfully increased the principal balance on their mortgage loan by the total amount of the deferred payments.  Plaintiffs' claims are also typical of the 15 U.S.C. § 1639g Subclass in that

they received an inaccurate payoff statement as a result of PNC's practice of adding the total amount of the deferred payments to the principal balance on the mortgage loans.

52.    **Adequacy:** Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclasses as required by Fed. R. Civ. P. 23(a)(4).  Plaintiffs are adequate representatives of the Class and Subclasses because they do not have any interests that are adverse to the interests of the Class and Subclasses.  Plaintiffs are committed to the vigorous prosecution of this lawsuit and, to that end, Plaintiffs have retained counsel who are competent and experienced in handling class action litigation on behalf of consumers, including claims against financial institutions.

53.    Plaintiffs' interests are co-extensive with, and not antagonistic to, those of the absent members of the Class and Subclasses.  Plaintiffs will undertake to represent and protect the interests of the absent members of the Class and Subclasses.

54.    Plaintiffs have engaged the services of the undersigned counsel.  Counsel is experienced in complex consumer class action litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiffs and the absent members of the Class and Subclasses.

55.    **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action under Fed. R. Civ. P. 23(b)(3) because: (a) the members of the Class and Subclasses do not have an interest in individually controlling the prosecution of separate actions; (b) there is no pending litigation concerning the controversy already begun by the Class and Subclasses; (c) it is desirable to concentrate the litigation of the claims in this particular forum; and (d) there will be no difficulties in managing this case as a class action. The superiority requirement is satisfied because a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.

56.    **Predominance:** Class action status is warranted under Fed. R. Civ. P. 23(b)(3) because questions of law or fact common to the Class and Subclasses predominate over questions affecting only individual members.  The interests of the members of the Class and Subclasses in individually controlling the prosecution of separate actions are theoretical and not practical. Prosecution of this action through Class Representatives would be superior to individual lawsuits. Plaintiffs are not aware of any difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

**COUNT ONE**

**BREACH OF CONTRACT**

**(On Behalf of Plaintiffs and the Class and Subclasses)**

57.    Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

58.    Plaintiffs bring this claim on behalf of themselves and the members of the Class and Subclasses.

59.    Plaintiffs and the members of the Class and Subclasses entered into Deferral Agreements relating to their mortgage loans with PNC.  A copy of PNC's standard form Deferral Agreement is attached as **Exhibit A**.

60.    Under the terms of the Deferral Agreements, PNC agreed to bring Plaintiffs' and the Class's mortgages current and delay repayment of certain past-due monthly principal and interest payments, as well as other amounts advanced by PNC as part of their missed payments. *See* Exhibit A, p. 2.  PNC further agreed that the deferred payments would not accrue interest, and that Plaintiffs and the Class and Subclasses would not be responsible for paying the deferred payments until "the maturity date of the mortgage or earlier upon the sale or transfer of the property, payoff of the mortgage loan, or the date the interest-bearing principal balance is paid in full." *Id.*  PNC represented and agreed that "[t]he payment deferral will not change any other terms of your mortgage."  *Id.*

61.    In breach of the Deferral Agreements, PNC added the total deferred payments to the outstanding principal balance on the mortgage loan.  This has the effect of double-charging Plaintiffs and the Class and Subclasses for their past-due principal payments and improperly increasing the amount of their mortgages.  In addition, Plaintiffs and the members of the Class and Subclasses who subsequently paid deferred amounts early (i.e., before the end of the loan) were double-charged interest on their deferred payments.

62.    Plaintiff and the members of the Class and Subclasses actually and substantially complied with their contractual obligations under the Deferral Agreements, unless such obligations were otherwise excused as a matter of fact or law.

63.    Plaintiff and the members of the Class and Subclasses were harmed, suffered out-of-pocket loss, and did not receive the benefit of their bargains because PNC (a) wrongfully increased the principal balances on their mortgage loans; and (b) collected those inflated amounts when Plaintiffs and the Class and Subclass made subsequent payments on their mortgage loans and/or when they paid off or refinanced their mortgage loans.

64.    PNC is liable to Plaintiffs and the Class and Subclasses for the damages they suffered as a result of PNC's breaches of the Deferral Agreement.

## COUNT TWO

## VIOLATION OF THE TRUTH-IN-LENDING ACT ("TILA")

## 15 U.S.C. § 1638(f); 12 C.F.R. § 1026.41(d)(7)(i)

### (On Behalf of Plaintiff and the Class and Subclasses)

65.    Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

66.    Plaintiffs bring this claim on behalf of themselves and the members of the Class and Subclasses.

67.    15 U.S.C. § 1638(f) of TILA, and its implementing Regulation Z, requires the creditor or servicer of the mortgage loan (PNC) to provide periodic mortgage statements that

accurately disclose the amount of the principal obligation under the mortgage. 12 C.F.R. § 1026.41(d)(7)(i). It further requires the mortgage statement disclose "the existence of any prepayment penalty … that may be charged." 12 CFR § 1026.41(d)(7)(iv).

68. After Plaintiffs and the members of the Class and Subclasses entered into their Deferral Agreements, PNC added their total deferred payments to the outstanding principal balance on their mortgage loans. This has the effect of double-charging Plaintiffs and the Class and Subclasses for their past-due principal payments and improperly increasing the principal obligation on their mortgage loans.

69. Thereafter, in violation of TILA, PNC sent Plaintiffs and the Class and Subclasses periodic mortgage statements that disclosed an inaccurate and inflated principal obligations on their mortgage loans. The statements further failed to disclose that Plaintiffs and the Class and Subclasses would be charged a prepayment penalty if they paid the deferred amounts early.

70. 15 U.S.C. § 1639g of TILA and 12 C.F.R. § 1026.36(c)(3) require PNC to provide borrowers, upon request, with an accurate statement of the total amount required to pay off the loan by a specified date. PNC violated that law by providing Plaintiffs and the 15 U.S.C. § 1639g Subclass with an inaccurate and inflated principal balance as a result of PNC's practice of adding the total deferred payments to the outstanding principal obligation on the mortgage loans.

71. Plaintiffs and the Class and Subclasses made payments to PNC in reliance on the inaccurate mortgage statements and/or inaccurate payoff statements and suffered out-of-pocket losses as result of PNC's violations of TILA. Further, the inaccurate disclosures in the mortgage statements and payoff statements, in and of themselves, harmed Plaintiffs and the Class and Subclasses, because they did not provide accurate information for financial planning purposes.

72. Pursuant to 15 U.S.C. § 1640(a), Plaintiffs, on behalf of themselves and the Class and Subclasses, hereby seek the sum of their actual damages plus statutory damages in an amount to be determined at trial. With respect to the statutory damages, if this case is certified as a class action, then Plaintiffs, on behalf of themselves and the Class and Subclasses, seek statutory damages in the amount of $1,000,000.00 for PNC's violation of 12 C.F.R. § 1026.41(d)(7)(i)

(sending mortgage statements with inaccurate outstanding principal balances) and an additional $1,000,000.00 for PNC's separate violation of 12 C.F.R. § 1026.41(d)(7)(iv) (sending mortgage statements that fail to disclose pre-payment penalties).  Plaintiffs, on behalf of themselves and the 15 U.S.C. § 1639g Subclass, further seek an award of an additional $1,000,000.00 in statutory damages based on PNC's failure to provide accurate payoff statements in violation of TILA. Plaintiffs, on behalf of themselves and the Class and Subclasses, further seek their reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1640(a)(3).

73.     If this case is not certified as a class action, then Plaintiffs seek their actual damages plus statutory damages of not less than $400 or greater than $4,000 for each inaccurate mortgage statement and payoff statement provide to them by PNC. Plaintiffs further seek their reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1640(a)(3).

## COUNT THREE

### VIOLATION OF THE MARYLAND CONSUMER PROTECTION ACT

### Md. Code. Ann. Com. Law §§ 13-301, *et seq.*

### (On Behalf of Plaintiff and the Maryland Subclass)

74.     Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

75.     Plaintiffs bring this claim on behalf of themselves and the members of the Maryland Subclass.

76.     The Maryland Consumer Protection Act ("MCPA"), Md. Code Ann. Com. Law §§ 13-301, *et seq.*, prohibits unfair and deceptive trade practices in the extension of consumer credit and/or collection of consumer debts, including but not limited to making false or misleading representations that have the "capacity, tendency, or effect of deceiving or misleading consumers" and failing to "state a material fact if the failure deceives or tends to deceive."  Md. Code Ann. Com. Law §§ 13-301(1), (3), (9).

77.     Prior to entering the Deferral Agreements, PNC sent a uniform written offer to Plaintiffs and the Maryland Subclass in which it represented that the Deferral Agreements would only "delay" or "defer" the payment of past-due amounts and that "[t]he payment deferral will not change any other terms of your mortgage."  *See* Exhibit A, p. 2.  PNC uniformly failed to disclose that it intended to add the total deferred payments to the outstanding principal balance on their mortgage loans which would have the effect of double-charging Plaintiffs and the Maryland Subclass for their past-due principal payments and increasing their mortgage loans.

78.     PNC had a duty to disclose the information set forth in the preceding paragraph above, because it is contrary to its affirmative representations that PNC made to Plaintiffs and the Maryland Subclass, including but not limited to its representation that "[t]he payment deferral will not change any other terms of your mortgage."  Without the disclosure of the aforementioned information, this statement is highly misleading because PNC's practice of adding the total deferred payments to the principal balance does, in fact, change the terms of the mortgage by increasing the amount of the mortgage.  PNC further had a duty to disclose this information because it had superior and exclusive knowledge that it would add the total deferred payments to the principal balance if Plaintiffs and the Maryland Subclass entered the Deferral Agreements.

79.     PNC further violated the MCPA by sending periodic mortgage statements which contained inaccurate and inflated principal balances for the mortgage loans and failed to disclose the borrower would be charged a prepayment penalty if they paid off the deferred amounts early.  PNC knew and understood that Plaintiffs and the Maryland Subclass would rely on the accuracy of the periodic mortgage statements when making their mortgage payments and/or paying off their mortgage loans.  PNC further sent inaccurate payoff statements to Plaintiffs and other members of the Maryland Subclass.

80.     The aforementioned misrepresentations and omissions are material because the fact that PNC would increase the principal balance on the mortgage loans and effectively double-charge the past-due principal payments would be important to a reasonable person's decision regarding whether or not to enter into a Deferral Agreement.  Further, Plaintiffs and the Maryland

Subclass relied on the accuracy of the mortgage statements, including but not limited to the principal balances disclosed therein, when making their mortgage payments and/or paying off their mortgage loans.

81.    PNC intended for consumers to rely on their representations and omissions in order to induce consumers, including Plaintiffs and the Maryland Subclass to enter the Deferral Agreements and make overpayments on their mortgages.

82.    The aforementioned misrepresentations and omissions actually deceived and induced Plaintiffs and the Maryland Subclass to enter the Deferral Agreements and make overpayments on their mortgages.  These misrepresentations and omissions are objectively deceptive and have the "capacity, tendency, or effect of deceiving or misleading" reasonable consumers.

83.    As a result of the foregoing acts and omissions, Plaintiffs and the Maryland Subclass entered into the Deferral Agreements and paid more money than they should have paid under their mortgage loans.

84.    PNC's conduct had an impact on the public interest because those acts were part of a generalized course of conduct affecting numerous consumers.

85.    Based on the foregoing, Plaintiffs and the Maryland Subclass are entitled to recover damages and restitution of all overcharges, together with appropriate penalties, including exemplary damages, as well as reasonable attorneys' fees and costs.

86.    Plaintiffs, on behalf of themselves and the Maryland Subclass, further seek an injunction requiring PNC to (a) recalculate the outstanding principal balance on all affected mortgage loans; (b) notify all affected consumers; and (c) refund or credit any resulting overcharges of principal, interest and any other amounts.

**COUNT FOUR**

**DECLARATORY RELIEF**

**(On Behalf of Plaintiff and the Class and Subclasses)**

87.     Plaintiffs hereby repeat, reallege and incorporate by reference each and every allegation contained above as though the same were fully set forth herein.

88.     Plaintiffs bring this claim on behalf of the Class and Subclasses.

89.     There exists a present controversy between the parties as whether the Deferral Agreement permits PNC to add the total deferred payments to the principal balance on the mortgage loan.

90.     Plaintiffs and the Class and Subclasses contend that PNC does not have such right. PNC contends that it does.

91.     Based on the foregoing, Plaintiffs and the Class and Subclasses seek an order declaring that PNC's Deferral Agreements do not permit PNC to add the total deferred payments to the principal balance on the mortgage loans or to double collect any of the deferred payments.

92.     This declaration will benefit Plaintiffs, the Class and Subclasses and the members of the general public, as well as PNC, because consumers may enter into Deferral Agreements with PNC in the future, or are still subject to these agreements, and the requested declarations will serve a useful purpose in establishing PNC's and its customers' future obligations.  It is potentially possible that these issues may not be resolved in connection with the breach of contract claim in the event that PNC prevails on any procedural defenses to that claim.

**COUNT FIVE**

**VIOLATION OF THE REAL ESTATE SETTLEMENT PRACTICES ACT ("RESPA")**

**12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1034.34(e)(1)(i)**

**(On Behalf of Plaintiffs Only)**

93.     Plaintiffs hereby repeat, reallege and incorporate by reference the allegations in Paragraphs 15 through 40 above as though the same were fully set forth herein.

26

94.     Plaintiffs are bringing this claim in their individual capacities only.

95.     The Real Estate Settlement Practice Act ("RESPA") is a consumer protection statute that regulates the real estate settlement process, including the servicing of loans.  The statute requires loan servicers to promptly respond to a "qualified written request" from a borrower alleging that his or her account is in error. 12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1034.34(e)(1)(i).

96.     Specifically, within thirty (30) days of receiving a qualified written request, a servicer must either (a) "make appropriate corrections" to the account and notify the borrower of the corrections; (b) "after conducting an investigation, provide the borrower with a written explanation that includes . . . a statement of the reasons for which the servicer believes the account is correct as determined by the servicer"; or (c) "after conducting an investigation, provide the borrower with a written explanation or clarification that includes . . . information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer."  12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1034.34(e)(1)(i).

97.     In August 2021, Plaintiffs sent written requests to PNC asking them to reconcile the payments they made to satisfy their past-due amounts and explain how it was possible that "we've paid almost $20,000 but our balance has increased."  *See* Exhibit G.  Each of these written requests constitutes a "qualified written request" under RESPA.

98.     In violation of RESPA, PNC did not correct the errors noted by Plaintiffs, nor did PNC conduct an investigation and provide a written statement of the reasons PNC believed its practice of adding the total past-due amounts to the principal balance is appropriate

99.     Plaintiffs were harmed by this RESPA violation because PNC subsequently required Plaintiffs to pay an inaccurate and overstated principal balance as part of the process of refinancing their mortgage loan on or about August 11, 2021.  PNC has not credited or refunded the overpayments.

100.    This violation is part of a pattern and practice by PNC in which it fails to correct the errors caused by its practice of adding the total deferred payments to the principal balance even when questioned by its customers.

101.    Pursuant to 12 U.S.C. § 2605(f), PNC is liable to Plaintiffs for their actual damages plus statutory damages of $2,000.  Plaintiffs are further entitled to their reasonable attorneys' fees and costs.  *Id.*, § 2605(f)(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court enter a judgment against PNC and in favor of Plaintiffs and the members of the Class and Subclasses and award the following relief:

1. An order certifying this lawsuit as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, appointing Plaintiffs as the representatives of the Class and Subclass, and appointing Plaintiffs' counsel as Class Counsel for the Class and Subclasses;

2. An order declaring that PNC's Deferral Agreements do not permit PNC to add the total deferred payments to the principal balance on the mortgage loan or to double collect the deferred amounts;

3. An injunction requiring PNC to (a) recalculate the outstanding principal balance on all affected mortgage loans; (b) notify all affected consumers; and (c) refund or credit any resulting overcharges of principal, interest or any other amounts;

4. An award to Plaintiffs and the members of the Class and Subclasses of all appropriate relief, including actual damages, restitution and disgorgement of all improper charges of principal and interest and any other amounts;

5. An award of statutory damages to Plaintiffs and the Class and Subclasses under TILA;

6. An award of statutory damages to Plaintiffs, in their individual capacities, for PNC's violations of RESPA;

7. An award of reasonable attorneys' fees;

8. An award of all costs for prosecuting the litigation, including expert fees;

9. An award of pre- and post-judgment interest; and

10. An order granting any such additional relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury as to all claims in this action so triable.


Dated:  October 5, 2021                    Respectfully submitted,

By:_____/s/ *Charles S. Fax*_____

RIFKIN WEINER LIVINGSTON, LLC
Charles S. Fax (Maryland Federal Bar No. 2490)
Liesel J. Schopler
Stephen Kuperberg
4800 Hampden Lane, Suite 820
Bethesda, Maryland 20814
Telephone: (301) 951-0150
cfax@rwllaw.com
lschopler@rwllaw.com
skuperberg@rwllaw.com


Of Counsel:

FRANK SIMS & STOLPER LLP
Jason M. Frank (*pro hac vice to be filed*)
Scott H. Sims (*pro hac vice to be filed*)
Andrew D. Stolper (*pro hac vice to be filed*)
19800 MacArthur Blvd., Suite 855
Irvine, CA 92612
Telephone: (949) 201-2400
jfrank@lawfss.com
ssims@lawfss.com
astolper@lawfss.com